**TRENK, DiPASQUALE,
DELLA FERA & SODONO, P.C.**
347 Mt. Pleasant Avenue, Suite 300
West Orange, NJ 07052
(973) 243-8600
Anthony Sodono III
Joao F. Magalhaes
*Proposed Counsel for RCC Consultants, Inc.,
 Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>RCC CONSULTANTS, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 15-_____ (___) |

**APPLICATION IN SUPPORT OF MOTION PURSUANT TO 11 U.S.C. §§ 105, 363(c)(2)(B), 363(e), 507(b), FED. R. BANKR. P. 4001(b), AND D. N.J. L.B.R. 4001-4 IN SUPPORT OF DEBTOR'S REQUEST FOR AUTHORITY TO USE CASH COLLATERAL**

TO:   THE HONORABLE JUDGES OF THE
      UNITED STATES BANKRUPTCY COURT

Chapter 11 debtor and debtor-in-possession RCC Consultants, Inc. ("RCC" or the "Debtor"), by and through its proposed undersigned counsel, hereby moves before this Court for authority to use cash collateral pursuant to Title 11 of the United States Code (the "Bankruptcy Code") sections 105, 363(c)(2)(B), 363(e), and 507(b), and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (the "Application"). In support of the Application, the Debtor respectfully represents as follows:

**INTRODUCTION**

1.    By this Application, the Debtor seeks preliminary and final authority to use the alleged cash collateral of TD Bank, N.A., successor by merger to Commerce Bank, N.A.

(referred to as "TD" or "Secured Creditor"), in order to continue operating in the ordinary course as a debtor-in-possession to maximize value as a going-concern while it negotiates and proposes an orderly reorganization of its business.  As set forth below, the Debtor submits that the Secured Creditor, as the party with alleged interests in the Debtor's cash collateral, is adequately protected against the diminution in value of its position.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984, as amended September 18, 2012.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409(a).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## DESCRIPTION OF DEBTOR'S OPERATIONS AND BACKGROUND

3. The Debtor filed its voluntary Chapter 11 petition on May 1, 2015 (the "Petition Date").

4. RCC continues to operate its business and manage its affairs as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  As of the filing of this Motion, no trustee, examiner or creditors' committee has been appointed in this case.

5. A history and description of RCC and its operations, together with the reasons for its Chapter 11 filing, are set forth in the *Declaration of Michael W. Hunter, President and Chief Executive Officer of RCC Consultants, Inc. in Support of First Day Matters* (the "First Day Declaration"), which is incorporated herein as if set forth in its entirety.

2

**SECURED DEBT**

**A. TD Bank, N.A. ("TD" or "Secured Creditor")**

6. RCC and Secured Creditor entered into a Revolving Credit Note ("Note') (as defined therein) dated May 31, 2007, whereby it evidenced a revolving credit facility in the amount of $3,000,000. To secure the obligation under the Note, RCC executed and delivered to Secured Creditor a first priority lien on all assets of RCC as evidenced by a Loan and Security Agreement (as defined therein) dated May 31, 2007 (the "Loan and Security Agreement").

7. The collateral subject to the Secured Creditor's lien is set forth in its filed UCC-1 (and continuation statement), and includes the following:

> All personal property of the Debtor of every kind and nature, wherever located, whether now owned or hereafter acquired, including without limitation, the following categories of property as defined in Revised Article 9 of the Uniform Commercial Code; goods (including inventory, equipment, fixtures, farm products and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables),[1] chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations and any and all proceeds of the foregoing ("collectively the "TD Secured Assets").

8. RCC Holdings, Inc., and RCC Holdings, L.L.C. have guaranteed the payment and performance of RCC's obligations under the Note and Loan and Security Agreement as evidenced by a certain Surety and Guaranty Agreement (as defined therein) dated May 31, 2007 (the "RCC Guaranty").

9. The terms of the Loan as evidenced by the Note were modified from time to time, including a certain Modification Agreement (as defined therein) dated November 29, 2010 (the "2010 Modification Agreement"). The 2010 Modification Agreement provided that Stream

---

[1] Although "health-care-insurance receivables" is set forth in the financing statement, the Debtor never had nor has any "health care insurance receivables."

Wireless, Inc. ("SWI") (an "affiliate"), became a co-borrower on the Loan evidenced by the Note. SWI granted to Secured Creditor a lien on its personal property and assets, the maturity date of the Loan was extended until May 31, 2011, and the principal balance of the Note was increased to $4,000,000.

10. Eventually, the Loan evidenced by the Note and prior modifications were subsequently modified by a Seventh Amendment to Revolving Credit Note and Third Amendment to Loan and Security Agreement (as defined therein) dated August 31, 2011, eighth Amendment to Revolving Credit Note and Third Amendment to Loan and Security Agreement (as defined therein) dated October 12, 2012, and the letter agreements dated August 28, 2013 and November 4, 2013. The November 4, 2013 letter agreement extended the maturity date of the obligation evidenced by the Note until November 29, 2014. After Secured Creditor sent a Notice of Default to RCC, the Secured Creditor agreed to extend the maturity date until February 28, 2015.

11. Thereafter, on March 13, 2015, RCC and Secured Creditor entered into a Forbearance Agreement (as defined therein). Effective as of March 2, 2015, the principal amount of the Note, as modified, was decreased to $3,500,000. The Forbearance Agreement requires RCC to pay all sums due and owing by the earlier of May 28, 2015, or the occurrence of an event of default.

12. As of April 27, 2015, Secured Creditor is owed approximately $1,870,656.37 (before a lockbox deposit of $27,709.50 that should further reduce the loan balance).

13. According to the UCC Financing Statement in favor of Secured Creditor, it enjoys a lien on, among other things, RCC's accounts. Pursuant to RCC's books and records, accounts receivable total approximately $4.5 million. Most, if not all, of the receivables are collectible.

14. In addition, Secured Creditor is secured by other assets as set forth in its financing statement. Thus, Secured Creditor is substantially over-secured by its collateral.

**B. Other UCC-Holders (together with TD, "Secured Creditors")**

15. The following parties are also secured creditors of RCC and, upon information and belief, maintain active UCC Financing Statements:

16. TD Equipment Finance, Inc. ("TD Equipment") filed a UCC Financing Statement on August 7, 2009. As per its financing statement, TD Equipment enjoys a lien on office and other equipment. As of April 28, 2015 TD Equipment is owed one more lease payment of $2,504.00. RCC intends to make that payment.

17. Dell Financial Services, LLC ("Dell") filed a UCC Financing Statement on August 1, 2008. Dell filed a UCC Financing Statement Amendment on May 20, 2013. As per its financing statement, Dell enjoys a lien on the following collateral:

> All computer equipment and peripherals (collectively "Equipment") wherever located, financed under and described in the Master Lease Agreement ("MLA") entered into between Lessee and Lessor and all of Lessee's rights, title and interest in and to use any software and services (collectively "Software") financed under and described in the MLA, along with any modifications or supplements to the MLA which are incorporated or evidenced in writing and all substitutions, additions, assessions and replacements to the Equipment or Software now or hereafter installed in, affixed to, or used in conjunction with the Equipment or Software and the proceeds thereof together with all payments, insurance proceeds, creditors or refunds obtained by Lessee from a manufacturer, licensor or service provider, or other proceeds and payments due and to become due and arising from or relating to such Equipment, Software or the MLA.

As of April 28, 2015, RCC is current on its payments to Dell. Dell is paid approximately $4,500.00 monthly. RCC intends to continue to make monthly payments post-petition to Dell.

18. GreatAmerica Financial Services Corporation ("GreatAmerica") filed a UCC Financing Statement on July 5, 2013. As per its financing statement, GreatAmerica enjoys a lien on "various Xerox copiers, printers and their accessories and all products, proceeds and

5

attachments." GreatAmerica is owed $21,265.00 as of April 28, 2015. RCC intends to continue to pay GreatAmerica on a monthly, post-petition basis.

19. Ascentium Capital LLC ("Ascentium") filed a UCC Financing Statement on April 16, 2014. As per its financing statement, Ascentium enjoys a lien on two (2) iBwave software systems. The monthly payment to Ascentium is $2,012.00 per month. RCC is current on its payments to Ascentium, and intends to continue to pay the monthly payment post-petition.

20. With regard to all of the alleged secured creditors set forth above, RCC reserves its right to review the extent, validity and priority of the secured creditors' liens.

## THE DEBTOR SHOULD BE AUTHORIZED TO USE CASH COLLATERAL

21. RCC should be authorized to use the Cash Collateral in the ordinary course of its business. The Secured Creditor is adequately protected by the proposed adequate protection.

22. Pursuant to Bankruptcy Code section 363(a), cash collateral is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents . . . and the proceeds thereof." 11 U.S.C. § 363(a).

23. By operation of Bankruptcy Code section 363(c)(2) and Bankruptcy Rule 4001(b), a debtor may not use cash collateral unless the entity that has an interest in such cash collateral consents, or until the Court authorizes the use of cash collateral after notice and a hearing and upon a finding that the interest of the secured party is adequately protected. Also, section 363(c)(2) permits this Court to allow a debtor to use cash collateral so long as the debtor provides its secured creditors with adequate protection.

24. Although "adequate protection" is not defined in the Bankruptcy Code, courts generally describe it as "a balancing of the debtor's and a creditor's respective harm," see In re Carson, 34 B.R. 502, 505 (Bankr. D. Kan. 1983) (citation omitted), and the legislative history of

Bankruptcy Code section 361 reflects congressional intent to give courts flexibility to fashion adequate protection in light of the facts of each case and general equitable principles. In re 5-Leaf Cover Corp., 6 B.R. 463, 466 (Bankr. S.D. W. Va. 1980).

25. In addition, Bankruptcy Code section 361 sets forth three (3) non-exclusive[2] methods of how an interest in property may be adequately protected, stating as follows:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

26. The "interest" of a secured creditor which is entitled to be protected is the value of the secured creditor's allowed secured claim; that is, the amount of the secured creditor's claim up to the value of the collateral upon which the secured creditor has a lien as of the relevant valuation date. In re Shriver, 33 B.R. 176, 181 (Bankr. N.D. Ohio 1983); In re South Village, Inc., 25 B.R. 987, 994 (Bankr. D. Utah 1982). The alleged secured creditor is only

---

[2] Courts have held that the adequate protection mechanisms enumerated by Bankruptcy Code section 361 are not exhaustive. See In re Miller, 734 F.2d 1396 (9th Cir. 1984); In re Family Place Partnership, 95 B.R. 166 (Bankr. E.D. Cal. 1989).

entitled to assurance that the value of its lien will not decrease as a result of the automatic stay and, if it does, that it will receive something as compensation for the decrease. In re Ramco Well Service, Inc., 32 B.R. 525, 531 (Bankr. W.D. Okla. 1983). Therefore, where the value of the collateral is not declining, a debtor need not do anything for the secured creditor as it is adequately protected. Id.; accord, In re Price, 40 B.R. 578, 580 (Bankr. N.C. Tex. 1984).

27.     Furthermore, courts have held that the existence of an equity cushion can also provide adequate protection. In re Gallegos Research Group, Corp., 193 B.R. 577, 584 (Bankr. D. Col. 1995) (oversecured creditors may not be entitled to cash payments or post-petition liens because they are adequately protected through the existence of a value cushion). Personal guaranties are to be taken into account when calculating the value of a secured creditor's equity cushion. See, e.g., In re Diaconx Corp., 69 B.R. 333, 340 (Bankr. E.D. Pa. 1987).

28.     In the present matter, the Debtor has approximately $4,500,000 in accounts receivable; the Debtor believes that substantially all of its receivables are collectible. Although about $1.5 million in accounts receivable are 120 days old, the Debtor historically has recorded very few uncollectible receivables. The Debtor also opines that its personal property is valued at $500,000 fair market value, and $100,000 liquidated value. Moreover, the Debtor has $10 million in "shovel ready" projects. In addition, such projects generally result in millions of dollars in "add-on" projects.

29.     Accordingly, the Debtor hereby seeks the preliminary use of cash collateral to preserve its assets so as to maintain and maximize its value for the benefit of all parties-in-interest. The Debtor's budget, which projects revenues and expenses for the thirty (30) day period following the filing of RCC's petition for relief, is annexed as **Exhibit A**.[3]  As adequate

---

[3] The Budget is subject to revision and is being submitted to the Court in this format due to the emergent nature of the subject application.

protection, the Debtor seeks to preliminarily tender a payment of $12,000 to the Secured Creditor for interest only on an interim basis until the final hearing. This payment is the current contract payment (absent acceleration as a result of alleged defaults).

30. In addition, the Debtor proposes to provide adequate protection to Secured Creditors by granting (i) a replacement lien; and (ii) a Section 507(b) superpriority administrative expense.

31. A denial of the use of cash collateral to fund the Debtor's day-to-day operations will severely harm the Debtor at a critical time and hinder its ability to reorganize. Essentially, without the authority to use the cash collateral, the Debtor cannot continue to operate. It will cause a loss of going-concern value and preclude the ability to reorganize; thereby preventing creditors from realizing upon reorganization value.

32. The Debtor has the ability to reorganize within a reasonable period of time and make distribution for the benefit of all creditors.

**TIMING AND NOTICES**

33. The Debtor respectfully seeks a two-part hearing process. First, pursuant to Bankruptcy Rule 4001(b)(2), the Debtor seeks a preliminary hearing on the use of cash collateral on less than fifteen (15) days' notice. Second, the Debtor seeks a final hearing on at least fifteen (15) days' notice, at which time a determination can be made regarding the terms of future financing with the Secured Creditor. At a minimum, the Debtor proposes, pursuant to Bankruptcy Rule 4001(b)(1) and (3), to give notice of this Motion to (i) the Office of the United States Trustee for the District of New Jersey; (ii) the Debtor's twenty largest unsecured creditors; (iii) all secured creditors (specifically TD Bank, N.A., TD Equipment Finance, Inc., Dell Financial Services L.L.C., GreatAmerica Financial Services Corporation and Ascentium Capital,

L.L.C.); (iv) those parties who filed a notice of appearance and request for service of pleadings in this Chapter 11 Case pursuant to Bankruptcy Rule 2002, if any; and (v) any other parties claiming an interest in the cash collateral, if any.

## NO PRIOR REQUEST

34. No prior application for the same or similar relief has been made to this or any other Court.

## REQUEST FOR WAIVER OF BRIEF

35. As no novel issue of law is raised and the relevant authorities relied upon by the Debtor are set forth herein, the Debtor respectfully requests that the requirement of Local Bankruptcy Rule 9013-2, concerning the filing of a brief, be waived.

## CONCLUSION

**WHEREFORE,** the Debtor respectfully requests that this Court approve the Debtor's use of cash collateral in the ordinary course of business, and grant such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**TRENK, DIPASQUALE,**
**DELLA FERA & SODONO, P.C.**
*Counsel to RCC Consultants, Inc.,*
*Debtor and Debtor-in-Possession*


By: /s/ *Anthony Sodono, III*
Anthony Sodono, III

Dated: May 1, 2015

4829-6660-5603, v. 1

10

# **EXHIBIT A**

# **EXHIBIT A**

**RCC Consultants, Inc.**
**Post filing 30 day budget - May 2015**

|  | ( $000 ) |
|---|---:|
| **Cash Availability** | |
| Cash receipts expected in the lockbox | 875 |
| Cash available in bank account | 163 |
| Total | 1,038 |
| | |
| **Expenses** | |
| Payroll | 830 |
| Disability/life premium (amount owed 50) | 20 |
| Employee paid AFLAC, Vision, voluntary life | 10 |
| Rents (total owed 350) | 42 |
| Employee travel expense | 25 |
| Misc phone, internet, office expense | 25 |
| Subcontractor payments | 35 |
| United States Trustee quarterly fees (1 month) | 3 |
| Interest on TD Bank loan at prime + 4% pursuant to current facility agreement current loan balance = $1.9 million | 12 |
| Total | 1,002 |
| | |
| **Cash availability less expenses** | 36 |